UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TANIA R.,

                              Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.

CASE NO. 2:19-CV-1219 – DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when he improperly discounted several medical opinions. The ALJ's error is therefore harmful, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of the Social Security Administration ("Commissioner") for further proceedings consistent with this Order.

1

<u>FACTUAL AND PROCEDURAL HISTORY</u>

2    On October 7, 2009, Plaintiff filed an application for SSI, alleging disability as of

3   October 26, 1985, with an amended onset date of October 7, 2009. *See* Dkt. 8, Administrative

4   Record ("AR") 688. The application was denied upon initial administrative review and on

5   reconsideration. *See* AR 688. A hearing was held before an ALJ on February 14, 2012, who

6   found Plaintiff not disabled. *See* AR 870. Plaintiff's request for review of the ALJ's decision was

7   denied by the Appeals Council. *See* AR 876. The United States District Court for the Western

8   District of Washington directed the Appeals Council to remand the case for further proceedings,

9   and it did so on March 10, 2014. *See* AR 892-901. Another hearing was held before ALJ Tom L.

10  Morris, who found Plaintiff not disabled. *See* AR 921. On June 24, 2016, the Appeals Council

11  remanded the case for further proceedings. *See* AR 930-931. Another hearing was held before

12  the ALJ who found Plaintiff not disabled on March 13, 2018. *See* AR 704. Plaintiff's request for

13  review was denied by the Appeals Council, making the ALJ's decision the final decision of the

14  Commissioner.[1] *See* AR 687; 20 C.F.R. § 404.981, § 416.1481.

15    In the Opening Brief, Plaintiff maintains the ALJ erred by: (1) improperly evaluating the

16  medical opinion evidence; and (2) failing to consider and apply the Medical-Vocational

17  Guidelines after Plaintiff reached age 50. Dkt. 10.

18

<u>STANDARD OF REVIEW</u>

19    Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

20  social security benefits if the ALJ's findings are based on legal error or not supported by

21

22

23

24

[1] Any reference to "the ALJ" or "the ALJ's decision" in this Order refers to ALJ Tom L. Morris and his March 13, 2018 decision.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 2

1  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th
2  Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

3  <u>DISCUSSION</u>

4  **I.    Whether the ALJ properly considered the medical opinion evidence.**

5          Plaintiff asserts the ALJ failed to properly consider the medical opinions of Drs. Rodney
6  Thompson, Evan Freedman, Kerry Bartlett, and Silverio Arenas. Dkt. 10.

7          In assessing an acceptable medical source, an ALJ must provide "clear and convincing"
8  reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester*
9  *v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.
10  1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). When a treating or examining
11  physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons
12  that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-831 (citing
13  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)); *Murray v. Heckler*, 722 F.2d 499, 502
14  (9th Cir. 1983). The ALJ can accomplish this by "setting out a detailed and thorough summary of
15  the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."
16  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747,
17  751 (9th Cir. 1989)).

18          A.  <u>Dr. Thompson</u>

19          Plaintiff argues the ALJ erred in discounting Dr. Thompson's May 2017 opinion. Dkt. 10,
20  pp. 3-9. Dr. Thompson opined Plaintiff was able to occasionally carry up to 10 pounds for no more
21  than 1/3 of an 8-hour day and frequently carry up to 10 pounds for 1/3 to 2/3 of an 8-hour day. AR
22  1467. He opined Plaintiff had the ability to sit, stand, and walk with normal breaks for about 4
23  hours during an 8-hour day. AR 1467. Dr. Thompson opined Plaintiff can sit for 20 minutes before
24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 3

changing position and can stand for 30 minutes before changing position. AR 1467. Dr. Thompson also opined Plaintiff must walk around every 30 minutes for 30 minutes. AR 1467. He opined Plaintiff can occasionally twist and stoop but must never crouch, climb stairs, or climb ladders. AR 1468. Dr. Thompson opined Plaintiff would miss more than 4 days of work per month due to her impairments. AR 1469. Finally, Dr. Thompson opined Plaintiff is limited to a sedentary level of exertion. AR 1468. Dr. Thompson based his opinion on imaging of Plaintiff's lumbar spine showing multi-level degenerative disc disease, right knee degenerative joint disease, and "advanced spondylosis." AR 1468.

The ALJ discounted Dr. Thompson's opinion because it is not supported by the record and gave two examples in support. AR 698. First, the ALJ concluded that "Dr. Thompson's own contemporaneous treatment records … do not establish the extreme restrictions assessed by Dr. Thompson." AR 698. An ALJ may give less weight to a physician's opinion if the physician's clinical notes and recorded observations contradict the physician's opinion. *Bayliss*, 427 F.3d at 1216; *see Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding the ALJ's rejection of a treating doctor's opinion because it was internally inconsistent); *Melton v. Commissioner of Social Sec. Admin.*, 442 Fed.Appx. 339, 341 (9th Cir. 2011) (finding the ALJ reasonably relied on an internal inconsistency when discrediting a doctor's opinion). But a conclusory reason does "not achieve the level of specificity" required to justify an ALJ's rejection of an opinion. *Embrey*, 849 F.2d at 421-422. Instead, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusions" so that the court "may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

1    Here, the ALJ noted that Dr. Thompson's records indicated Plaintiff had "good range of

2  motion" but "endorsed some pain with movement." AR 698. But the ALJ misstated Dr.

3  Thompson's opinion. Dr. Thompson did not opine Plaintiff had good range of motion. Rather,

4  he opined Plaintiff had "adequate internal-external rotation and full abduction" and that

5  "[r]ange of motion does not seem to be [a] significant hindrance, [but] pain with movement is."

6  AR 1475. Further, the ALJ's statement that "the physical findings and activities of [Plaintiff]

7  do not establish the extreme restrictions assessed by Dr. Thompson" is conclusory. *See Hess v.*

8  *Colvin*, No. 14–8103, 2016 WL 1170875, at *3 (C.D. Cal. Mar. 24, 2016) (an ALJ merely offers

9  her conclusion when her statement "stands alone, without any supporting facts"). The ALJ did

10  not cite to the record indicating which of Plaintiff's activities contradict Dr. Thompson's

11  opinion, nor did he adequately describe which physical findings contradict the opinion. Without

12  an adequate explanation to support the alleged inconsistency, the Court cannot determine if the

13  alleged inconsistency is a valid reason to discredit Dr. Thompson's opinion. *See Blakes*, 331

14  F.3d at 569.

15    Second, the ALJ concluded that Dr. Thompson's opinion is inconsistent with Dr. Yuri

16  Tsirulnikov's opinion. AR 698. The fact that Dr. Thompson's opinion is contradicted by Dr.

17  Tsirulnikov's opinion simply determines the governing standard for rejecting Dr. Thompson's

18  opinion. *See Lester*, 81 F.3d at 830-831 (citing *Andrews*, 53 F.3d at 1043) (establishing the

19  "specific and legitimate" standard for physician opinions that are contradicted); *Murray*, 722 F.2d

20  at 502. The ALJ also did not explain how Dr. Tsirulnikov's findings of intact strength, intact

21  gait, intact sensation, intact deep tendon reflexes, and negative straight-leg raising contradict

22  Dr. Thompson's opinion. Instead, the ALJ simply discusses Dr. Tsirulnikov's opinion and

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 5

1  concludes Dr. Thompson's opinion is entitled to little weight. This method of reasoning is not

2  specific or legitimate.

3      Furthermore, the ALJ also noted that Dr. Tsirulnikov "did not see anything alarming on

4  her physical examination." AR 698. But the ALJ failed to also note that although Dr.

5  Tsirulnikov did not see anything alarming, he "strongly suspect[ed] the pain is related to

6  lumbar face arthropathy" and that she potentially could have grade 2 spondylolisthesis. AR

7  1376. Thus, the ALJ has not explained how Dr. Tsirulnikov's opinion is inconsistent with Dr.

8  Thompson's opinion limiting Plaintiff to sedentary work.

9      The ALJ also reasoned Plaintiff's "conservative treatment measures" indicated her

10  symptoms were not as limiting as alleged. AR 698. An ALJ may reject a physician's opinion

11  when it is inconsistent with the level of treatment received, such as when the claimant receives

12  only conservative treatment. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see*

13  *also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (holding that "evidence of conservative

14  treatment is sufficient to discount a claimant's testimony regarding the severity of an

15  impairment") (internal quotation marks and citation omitted). But a conclusory reason does "not

16  achieve the level of specificity" required to justify an ALJ's rejection of an opinion. *Embrey*, 849

17  F.2d at 421-422. Here, the ALJ does not say which treatment measures he is referring to. *See* AR

18  698, 1375. Even assuming Plaintiff's course of treatment with Dr. Tsirulnikov was

19  conservative, then at most the ALJ has established the governing standard applicable to

20  properly discount Dr. Thompson's opinion.

21      For the above stated reasons, the Court concludes the ALJ failed to provide specific,

22  legitimate reasons supported by substantial evidence for assigning little weight to Dr.

23  Thompson's May 2017 opinion. Accordingly, the ALJ erred.

24

1    "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*,

2    674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial

3    to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout*

4    *v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at

5    1115. The determination as to whether an error is harmless requires a "case-specific

6    application of judgment" by the reviewing court, based on an examination of the record made

7    "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d

8    at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

9         Had the ALJ given great weight to Dr. Thompson's May 2017 opinion, the ALJ may

10   have included additional limitations in the residual functional capacity ("RFC"). For example,

11   Dr. Thompson opined Plaintiff is limited to a sedentary level of exertion. AR 1468. In contrast, in

12   the RFC, the ALJ limited Plaintiff to light work, which includes standing and/or walking.

13   Therefore, if Dr. Thompson's May 2017 opinion was given great weight and additional

14   limitations were included in the RFC and in the hypothetical questions posed to the vocational

15   expert ("VE"), the ultimate disability determination may have changed. Accordingly, the

16   ALJ's errors are not harmless and require reversal.

17        B.  Dr. Freedman

18        Dr. Freedman completed a psychological evaluation of Plaintiff in January 2008. AR 332-

19   345. Dr. Freedman reviewed Plaintiff's history, administered the Wechsler Adult Intelligence

20   Scale exam ("WAIS-III") and the Minnesota Multiphasic Personality Inventory ("MMPI-2"), and

21   conducted a clinical interview and mental status examination ("MSE") of Plaintiff. AR 332-345.

22   Dr. Freedman diagnosed Plaintiff with depression, anxiety, and dependent personality disorder. AR

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 7

1    341. Dr. Freedman also opined that "[Plaintiff's] Dependent Personality Disorder is more enduring

2    and is likely to obstruct her full time employability." AR 343.

3         The ALJ discussed Dr. Freedman's January 2008 opinion and gave it little weight, because:

4         (1) [T]his is essentially a conclusion that the claimant is "disabled" or "cannot work,"
          which is not a medical opinion. Rather, it is a legal conclusion that is reserved to the
5         Commissioner. (2) Additionally, Dr. Freedman largely based his conclusion that the
          claimant cannot work on his diagnosis of dependent personality disorder, which is
6         itself predicated largely on [Plaintiff's] subjective report on the MMPI-2. This
          opinion is given little weight as Dr. Freedman appeared to rely significantly on the
7         claimant's subjective complaints rather than her presentation. While she was
          described as being depressed and anxious, she was also cooperative, with good
8         grooming, with intact speech, and with good eye contact. (3) She also reported that
          she was able to care for her children and teach them homeschool lessons, manage
9         household chores, manage finances, and go grocery shopping.

10   AR 702 (numbering added) (citations omitted).

11        First, the ALJ discounted Dr. Freedman's January 2008 opinion because it infringes on an

12   opinion reserved to the Commissioner and "essentially" finds Plaintiff is disabled. A finding of

13   disability is exclusively reserved to the Commissioner. 20 C.F.R. 404.1527 (e)(1); 416.927 (e)(1).

14   But according to the Ninth Circuit, doctors "'may render medical, clinical opinions, or they may

15   render opinions on the ultimate issue of disability – the claimant's ability to perform work.'"

16   *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick*, 157 F.3d at 725). If a

17   doctor opines a claimant is unable to work, the opinion is not considered a finding on an issue

18   reserved to the Commissioner if it is "an assessment, based on objective medical evidence, of [the

19   claimant's] *likelihood* of being able to sustain fulltime employment[.]" *Hill v. Astrue*, 698 F.3d

20   1153, 1160 (9th Cir. 2012) (emphasis in original).

21        Here, Dr. Freedman offered an assessment of the likelihood of Plaintiff being able to

22   sustain fulltime employment when he opined that "[Plaintiff's] Dependent Personality Disorder …

23   is *likely* to obstruct her full time employability." AR 343 (emphasis added). Further, the assessment

24

1    is based on objective medical evidence. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)

2    (MSEs are "objective measures" which "cannot be discounted as a self-report"). Dr. Freedman

3    reviewed Plaintiff's history, administered the WAIS-III and the MMPI-2, and conducted a clinical

4    interview and MSE of Plaintiff. AR 332-345. Thus, Dr. Freedman's opinion is an assessment,

5    based on objective medical evidence, of Plaintiff's likelihood of being able to sustain fulltime

6    employment, and is not infringing on an opinion reserved to the Commissioner. Accordingly, the

7    ALJ's first reason for discounting Dr. Freedman's opinion is not specific and legitimate and

8    supported by the record.

9         Second, the ALJ discounted Dr. Freedman's opinion because it is based on the MMPI-2

10   results, which are based on Plaintiff's subjective complaints. AR 702. An ALJ may reject a

11   physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been

12   properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

13   (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). This situation

14   is distinguishable from one in which the doctor provides her own observations in support of her

15   assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200

16   (9th Cir. 2008). "[W]hen an opinion is not more heavily based on a patient's self-reports than on

17   clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*,

18   763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200).

19        Here, the ALJ has not explained how Dr. Freedman's opinion is based "to a large extent"

20   on Plaintiff's subjective complaints. In addition to the results of Plaintiff's MMPI-2, he also

21   reviewed Plaintiff's history, administered the WAIS-III, and conducted a clinical interview and

22   MSE of Plaintiff. AR 332-345. Further, the MMPI-2 has been considered an "objective test" by

23   Ninth Circuit courts. *See*, *e.g.*, *Rider v. Astrue*, 2008 WL 4587291 at *5 (E.D. Wash. Oct. 10,

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 9

2008). Additionally, the Ninth Circuit noted that "[p]sychiatric evaluations may appear

subjective, especially compared to evaluation in other medical fields." *Buck*, 869 F.3d at 1049.

"Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's

observations of the patient. But such is the nature of psychiatry. Thus, the rule allowing an ALJ

to reject opinions based on self-reports does not apply in the same manner to opinions regarding

mental illness." *Id.* (internal citations omitted). Therefore, the ALJ's second reason for

discounting Dr. Freedman's opinion is not specific and legitimate and supported by substantial

evidence.

Third, the ALJ discounted Dr. Freedman's opinion because it is inconsistent with

Plaintiff's activities of daily living. Courts have repeatedly stated that "a person's ability to engage

in personal activities … does not constitute substantial evidence that he or she has the functional

capacity to engage in substantial gainful activity." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir.

1998); *See O'Connor v. Sullivan*, 938 F.2d 70, 73 (7th Cir.1991) ("The conditions of work are not

identical to those of home life"). Plaintiff's ability to care for her children, teach them homeschool

lessons, manage household chores, manage finances, and go grocery shopping does not necessarily

show she could "perform an eight-hour workday, five days per week, or an equivalent work

schedule." *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1. Moreover, the ALJ

failed to explain how Plaintiff's ability to do such activities shows she could sustain a full-time

work schedule. *See Mulanax v. Comm'r of Soc. Sec. Admin.*, 293 Fed. Appx. 522-523 (9th Cir.

2008) (citing SSR 96-8p) ("Generally, in order to be eligible for disability benefits under the Social

Security Act, the person must be unable to sustain full-time work – eight hours per day, five days

per week"). In addition, disability claimants "should not be penalized for attempting to lead normal

lives in the face of their limitations." *Reddick*, 157 F.3d at 722. Thus, the fact that Plaintiff is able

1   to care for her children, teach them homeschool lessons, manage household chores, manage

2   finances, and go grocery shopping is not a legitimate reason for discounting Dr. Freedman's

3   opinion.

4         For the above stated reasons, the Court finds the ALJ failed to provide specific and

5   legitimate reasons supported by substantial evidence for discounting Dr. Freedman's January 2008

6   opinion. Accordingly, the ALJ erred, and is directed to reassess Dr. Freedman's opinion on

7   remand.

8         C.  Dr. Bartlett

9         Dr. Bartlett conducted a psychological evaluation of Plaintiff in April 2017 and previously

10   conducted a similar evaluation in 2009. AR 1388-1396. After reviewing Plaintiff's medical history,

11   conducting a clinical interview and MSE of Plaintiff, and administering clinical testing, Dr. Bartlett

12   opined Plaintiff is not a viable candidate for placement in any part-time or full-time employment, is

13   chronically preoccupied with her pain, and responds fearfully to both her pain and to challenges

14   she anticipates will be difficult. AR 1388, 1394, 1396.

15         The ALJ dismissed Dr. Bartlett's opinion, because:

16   (1) This opinion is accorded little weight as it does not appear that the claimant put
forth her full effort on the evaluation. For example, the doctor noted that the claimant
17   had struggled on memory tasks during the mental status examination, but she had
been previously able to complete these tasks and there is no evidence of significant
18   deterioration in between the dates of testing. This is further evidenced by similar
results in the claimant's formal intellectual testing between 2009 and 2017, which
19   produced "similar outcomes" according to Dr. Bartlett herself. (2) Dr. Bartlett also
appears to heavily rely on the claimant's subjective complaints, related to both her
20   mental and physical impairments. However, while there is evidence of limitations
from her symptoms, the longitudinal medical evidence of record does not establish
21   the limitations to the extent reported by the claimant. Again, which the claimant may
have periods of situational stress that result in exacerbations of her symptoms, there
22   is no evidence that this is caused by her mental health issues. (3) Moreover, her
reported activities throughout the record suggest that the claimant is capable of
23   functioning at a higher level than opined by Dr. Bartlett.

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 11

1    AR 698 (citations omitted) (numbering added).

2           The ALJ first discounted Dr. Bartlett's opinion because he suspected Plaintiff did not put

3    forth her full effort during the evaluation. AR 698. In support, the ALJ noted Plaintiff had done

4    well on the MSE and formal intellectual testing in prior consultations with Dr. Bartlett, and there

5    was "no evidence of significant deterioration in between the dates of testing." AR 698. The ALJ's

6    reasoning conflicts with Dr. Bartlett's opinion. Dr. Bartlett noted Plaintiff's anxiety about the

7    evaluation was a "limiting concern for her throughout testing" and that "she had very limited

8    frustration tolerance and tended to respond fearfully to any demand that she anticipated might

9    suggest incapacity on her part, with resultant anxious impulsiveness in many of her testing efforts."

10   AR 1391. But Dr. Bartlett opined "this manner of responding is characteristic" of Plaintiff. AR

11   1391. Dr. Bartlett further noted that although Plaintiff recalled meeting with Dr. Bartlett in 2009,

12   she had "only very vague recognition of the measures administered" on that date. AR 1392. Dr.

13   Bartlett ultimately opined that "test-retest gains would not appear to have been a concern. On

14   balance, I suspect that the level of effort that [Plaintiff] gave across tasks on this date was the best

15   of which she is currently capable." AR 1392.

16          Thus, as Dr. Bartlett opined Plaintiff put forth her best effort during the April 2017

17   evaluation, the ALJ erred by questioning Plaintiff's effort on the evaluation when Dr. Bartlett did

18   not do so. *See Ryan*, 528 F.3d at 1199-1200 ("an ALJ does not provide clear and convincing

19   reasons for rejecting an examining physician's opinion by questioning the credibility of the

20   patient's complaints where the doctor does not discredit those complaints and supports his

21   ultimate opinion with his own observations"). Accordingly, the ALJ's first reason for

22   discounting Dr. Bartlett's opinion is not specific and legitimate and supported by substantial

23   evidence.

24

1    The ALJ next dismissed Dr. Bartlett's opinion because it relied heavily on Plaintiff's

2  subjective complaints. Dr. Bartlett reviewed Plaintiff's medical history and conducted a clinical

3  interview, MSE, and administered clinical testing. AR 1388-1396. There is no evidence Dr.

4  Bartlett relied on Plaintiff's complaints more heavily than she relied on the MSE or other tests.

5  Because MSEs are "objective measures" which "cannot be discounted as a self-report," this reason

6  is not specific and legitimate and supported by substantial evidence. *See Buck*, 869 F.3d at 1049.

7    Lastly, the ALJ rejected Dr. Bartlett's opinion because it is inconsistent with Plaintiff's

8  activities of daily living. But the ALJ did not specify which activities he was referring to, nor did

9  he clarify how the activities suggest Plaintiff is capable of functioning at a higher level than opined

10  by Dr. Bartlett. Further, the activities the ALJ cited in his third reason for discounting Dr.

11  Freedman's opinion do not necessarily show Plaintiff could "perform an eight-hour workday, five

12  days per week, or an equivalent work schedule." *See* Social Security Ruling ("SSR") 96-8p, 1996

13  WL 374184, at *1. Moreover, the ALJ failed to explain how Plaintiff's ability to do such activities

14  shows she could sustain a full-time work schedule. *See Mulanax*, 293 Fed. Appx. at 522-523

15  (citing SSR 96-8p). Accordingly, the ALJ's third reason for discounting Dr. Bartlett's opinion is

16  not specific and legitimate and supported by substantial evidence.

17    For the above stated reasons, the Court finds the ALJ failed to provide specific and

18  legitimate reasons supported by substantial evidence to discount Dr. Bartlett's April 2017 opinion.

19  Therefore, the ALJ is directed to reassess Dr. Bartlett's April 2017 opinion on remand.

20    D.  Dr. Arenas

21    Dr. Arenas conducted a psychological evaluation of Plaintiff in April 2015 using a

22  Washington State Department of Social and Health Services ("DSHS") form. AR 1302-1306. Dr.

23  Arenas conducted a clinical interview and MSE of Plaintiff and diagnosed her with anxiety,

24

depression, PTSD, and pain disorder. AR 1302-1306. Dr. Arenas opined Plaintiff has marked

limitations in her ability to understand, remember, and persist in tasks by following detailed

instructions, and to learn new tasks, and severe limitations in performing work activities within a

schedule, maintaining regular attendance, and being punctual within customary tolerances without

special supervision. AR 1302-1306.

The ALJ discussed Dr. Arenas' opinion and gave it little weight, because:

> (1) I give little weight to this opinion because much of it is inconsistent with other
> records. For instance, intelligence testing and the claimant's demonstrated ability to
> homeschool her children, as discussed above, does not reflect the rather profound
> cognitive restrictions indicated by Dr. Silverio. Dr. Silverio was unaware of the
> inconsistencies between his opinion and the overall record because (2) he examined
> the claimant on only a single occasion and reviewed no treatment notes or other
> medical records; therefore, he did not have the full diagnostic picture prior to issuing
> his opinion. (3) Dr. Silverio also seemed to base some of his opinion on the claimant's
> report of pain and diabetes symptoms. However, he is not qualified draw [sic]
> conclusions regarding the claimant's physical impairments. (4) I also note that he
> failed to consider the claimant's own reported activities, including her ability to care
> for her special needs grandson, her ability to care for her other children and disabled
> husband, her ability to care for herself, and her ability to take the bus. (5) The findings
> of her mental status examination were also generally within normal limits.

AR 699 (citations omitted) (numbering added).

The ALJ first discounted Dr. Arenas' opinion because it is inconsistent with the record. AR

699. The ALJ cites Plaintiff's intelligence testing in support but does not specify which

intelligence testing he is referring to. Without an adequate explanation to support the alleged

inconsistency, the Court cannot determine if the alleged inconsistency is a valid reason to

discredit Dr. Arenas' opinion. *See Blakes*, 331 F.3d at 569.

The ALJ also cites Plaintiff's ability to homeschool her children as support for his

conclusion. In his fourth reason for discounting Dr. Arenas' opinion, the ALJ further reasons

that Plaintiff's ability to care for her special needs grandson, other children, disabled husband,

for herself, and her ability to take the bus supports his conclusion to discount Dr. Arenas'

opinion. But, as discussed above, these activities do not necessarily show Plaintiff could "perform an eight-hour workday, five days per week, or an equivalent work schedule." *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1. Further, the ALJ failed to explain how Plaintiff's ability to do such activities shows she could sustain a full-time work schedule. *See Mulanax*, 293 Fed. Appx. at 522-523 (citing SSR 96-8p). Accordingly, the ALJ's first and fourth reasons for discounting Dr. Arenas' opinion are not specific and legitimate and supported by substantial evidence.

Second, the ALJ discounted Dr. Arenas' opinion because it is based on a one-time consultation and did not review treatment notes or other medical records. AR 699. An examining doctor, by definition, does not have a treating relationship with a claimant and usually only examines the claimant one time. *See* 20 C.F.R. § 404.1527. "When considering an examining physician's opinion . . . it is the quality, not the quantity of the examination that is important. Discrediting an opinion because the examining doctor only saw claimant one time would effectively discredit most, if not all, examining doctor opinions." *Yeakey v. Colvin*, 2014 WL 3767410 at *6 (W.D. Wash. July 31, 2014). Therefore, the ALJ improperly rejected Dr. Arenas' opinion for this reason. Additionally, Defendant does not cite, nor does the Court find, authority holding an examining physician's failure to supplement his own examination and observations with additional records is, alone, a specific and legitimate reason to give less weight to the opinion. Accordingly, the Court finds the ALJ's second reason for giving little weight to Dr. Arenas' opinion is not specific and legitimate and supported by substantial evidence.

Third, the ALJ discounted Dr. Arenas' opinion because he based some of his opinion on Plaintiff's report of pain and diabetes symptoms. AR 699. As Dr. Arenas is not a medical doctor, the ALJ could discount Dr. Arenas' limitations regarding Plaintiff's physical limitations.

1   *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist

2   about medical issues related to his or her area of specialty than to the opinion of a source who is

3   not a specialist"). However, this reasoning cannot be applied to Dr. Arenas' opinion regarding

4   Plaintiff's psychological conditions. *See Anderson v. Colvin*, 223 F. Supp. 3d 1108, 1121 (D. Or.

5   2016). In any event, Dr. Arenas stated Plaintiff's chronic pain conditions worsen her emotional

6   distress, "and add physical limitations to her *already compromised* functional status." AR 1303

7   (emphasis added). The Court, therefore, finds this is not a specific, legitimate reason supported

8   by substantial evidence for giving little weight to Dr. Arenas' opinion.

9           Lastly, the ALJ discounted Dr. Arenas' opinion because the MSE was "generally within

10   normal limits." AR 699. Although Dr. Arenas opined Plaintiff's perception, fund of knowledge,

11   abstract thought, and insight and judgment were all within normal limits, he also opined

12   Plaintiff's thought process and content, orientation, memory, and concentration were all not

13   within normal limits. AR 1306. Dr. Arenas also opined that "cognitively, [Plaintiff's] emotional

14   conditions constantly, and daily, significantly affect attention, concentration, memory, problem-

15   solving, and judgment processes; emotionally, [Plaintiff] is relatedly unable to adequately

16   moderate or controlled [sic] emotional responses, with consequent overwhelming nervousness

17   and crying, irritability, social withdrawal and isolation, and a tendency toward immobilization

18   and freezing responses when emotionally exhausted…" AR 1303. Thus, Dr. Arenas documented

19   numerous clinically significant findings on the MSE and clinical interview. AR 1303-1306.

20   Consequently, the ALJ "was simply not qualified to interpret raw medical data in functional

21   terms…" *Nguyen v. Chater*, 172 F.3d 31, 35 (9th Cir. 1999); *see also Schmidt v. Sullivan*, 914

22   F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges . . . must be careful

23   not to succumb to the temptation to play doctor"). Accordingly, the ALJ's fifth reason for

24

discounting Dr. Arenas' opinion is not specific and legitimate and supported by substantial evidence.

For the above stated reasons, the Court finds the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Arenas' opinion. Thus, the ALJ is directed to reassess Dr. Arenas' April 2015 opinion on remand.

**II.     Whether the ALJ properly considered and applied the Medical-Vocational Guidelines after Plaintiff reached age 50.**

Plaintiff argues the ALJ failed to properly consider the Medical-Vocational Guidelines after Plaintiff reached age 50. Dkt. 10, pp. 9-10. The Court has found the ALJ committed harmful error in failing to properly consider several medical opinions. *See* Section I, *supra*. Therefore, this case must be remanded for further proceedings and for the ALJ to reconsider the RFC. Additionally, on remand, the Court directs the ALJ to reconsider the Medical-Vocational Guidelines after Plaintiff reached age 50 and apply them accordingly.

<u>CONCLUSION</u>

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 24th day of April, 2020.

David W. Christel
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 17